IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND


MHD-ROCKLAND, INC.          *
                                         *

                                       *
   v.                             *        Civil No. CCB-13-2442
                                     *

                                     *
AEROSPACE DISTRIBUTORS, INC.   *

                                     *
                              ********

## MEMORANDUM

Plaintiff MHD-Rockland, Inc. ("Rockland") brings this lawsuit against defendant Aerospace Distributors, Inc. ("ADI"), alleging that ADI materially breached the parties' contract. Now pending are ADI's motion for summary judgment on Rockland's second amended complaint ("SAC"), and Rockland's cross-motion for summary judgment on Count II of its SAC.[1]

The parties have fully briefed the issues, and no oral argument is necessary. *See* Local R. 105.6. For the following reasons, ADI's and Rockland's motions will be denied.

## BACKGROUND

Rockland is a Maryland company and ADI is a Delaware company with its office in Washington. (ECF No. 32 ¶ 1). In September 2009, Rockland ordered four airplane wheel assemblies from ADI for $40,700 ($10,175 per wheel assembly). Rockland's purchase order requested that the wheel assemblies be in "OH," or overhauled, condition. (ECF No. 38-2 at p. 3) ADI shipped four "OH" wheel assemblies to Rockland on October 30, 2009. (*Id.* at pp. 5–6).

---

[1] After the court dismissed two of the three counts in Rockland's first amended complaint, Rockland filed its SAC which included a new count, rescission and restitution. ADI is the sole defendant because Rockland's claims against Aerospace Precision, Inc. ("API") were dismissed.

Upon receiving the wheel assemblies, Rockland shipped all four to its customer, the Royal New Zealand Air Force ("NZA").  (ECF No. 38-2 at p. 12).  Rockland informed ADI that NZA had rejected two of the four assemblies, claiming that they were damaged.  (Westerfield Decl., ECF No. 38-8 ¶ 3).  ADI disputed that allegation, and informed Rockland that a blasting process used by NZA to remove paint from the wheel assemblies can also cause damage.  (*Id.*; ECF No. 38-7 at p. 3).  After negotiating potential solutions, ADI requested that Rockland ship the two allegedly defective units to it for inspection, and ADI also agreed to ship two replacement assemblies to Rockland (for NZA) "as a business accommodation."  (ECF Nos. 38-8 ¶¶ 8–9; 38-2 at p. 14).

ADI purchased the two replacement assemblies from Aermeccanica.  (ECF Nos. 38-8 ¶ 10; 38-10).  API (the former co-defendant in this case) certified that they were in OH condition after it "inspected" the assemblies through a non-destructive test and visual inspection on May 12, 2011.  (ECF Nos. 38-8 ¶ 11; 38-2 at pp. 20–23).[2]  ADI shipped the replacement assemblies to Rockland on May 17, 2011.  (ECF No. 38-9 at p. 2).[3]  To satisfy NZA, Rockland quickly shipped the replacement assemblies without an inspection because "we [Rockland] had no way to determine their quality."  (ECF No. 38-2 at p. 20).

Upon receiving the replacement assemblies, NZA Sergeant John Urlich conducted a "visual inspection," which "led [him] to believe that" they were damaged.  (ECF No. 39-1 ¶ 4).  Based on that belief, Urlich decided he had to remove the paint from the assemblies "to verify

---

[2] As further evidence of the assemblies' condition when tendered to Rockland, ADI also cites the "Overhauled Airworthiness Tags" issued by Aermeccanica, from whom ADI purchased the replacement wheels.  (ECF No. 38-10).  Rockland argues that ADI's reliance on Aermeccanica's certification is new information.  (ECF No. 39 ¶¶ 10–11).

[3] Rockland requested that the replacement assemblies be in "SV condition," but ADI informed Rockland that it could not issue "SV" tags per FAA rules.  Rockland was aware of this when it requested ADI ship the replacement assemblies despite the parties not signing a new "Agreement."

[his] visual inspection."  *Id.*  He was "very careful" when removing the paint, and states that he

"did not cause any further damage . . . [t]he defects in the replacement wheel assemblies existed

before I removed the paint to verify the defects."  (*Id.* ¶ 5).  Urlich informed Rockland that the

replacement wheels suffered from various defects and, therefore, were "not in an overhauled

condition as the vendors have asserted."  (ECF No. 38-2 at p. 21) (internal quotation marks

omitted).  NZA shipped the replacement assemblies back to Rockland, who had UTC Aerospace

evaluate them.  (ECF No. 39-4)  UTC determined that the replacement assemblies were

damaged "beyond economical repair (BER)."  (ECF No. 39-4 at pp. 5, 7).

   Rockland mailed a letter to ADI on February 24, 2012, demanding $57,300 as

compensation for its replacement costs, lost time and labor, and damage to its reputation.  (ECF

No. 38-2 at p. 25) (stating that "the replacement halves [were] once again well out of tolerance").

ADI refused to pay, reiterating its position that the wheel assemblies were in proper condition

when shipped, and that NZA's paint-blasting procedures caused the damage that NZA and

Rockland were now complaining of.

   On July 3, 2013, Rockland filed this lawsuit in Maryland state court.  Defendants

removed the case to this court on August 21, 2013, asserting diversity jurisdiction.  *See* 28

U.S.C. § 1332.  The court previously granted ADI's motion to dismiss three of the four original

counts, which left only Rockland's breach of contract count and its damages claim for $20,350.

(ECF No. 22).  Rockland subsequently filed a second amended complaint that included a new

second count seeking in the alternative rescission and restitution.  (ECF No. 32).[4]

   ADI filed a motion for summary judgment on July 16, 2014, (ECF No. 38), and Rockland

filed a cross-motion for summary judgment on August 4, 2014.  (ECF No. 39).

---

[4] Because Count II is argued in the alternative, Rockland simply reiterates its demand for
$20,350 in damages.

**STANDARD**

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original). Whether a fact is material depends upon the substantive law. *See id.*

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion,'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (alteration in original) (quoting *United States v. Diebold*, 369 U.S. 654, 655 (1962)), but the court also must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993) (internal quotation marks omitted).

**ANALYSIS**

ADI moves for summary judgment on both counts in Rockland's SAC. Rockland argues that genuine disputes over material facts preclude summary disposition of Count I (breach of

contract), and moves for summary judgment in its favor on Count II (rescission and restitution).[5]

Both counts are addressed in turn.

## I.  Count I (Breach of Contract).

ADI argues that it complied with its contractual obligations by delivering conforming

"OH" quality wheel assemblies to Rockland, and that NZA's paint blasting process caused the

damage.  Rockland naturally disputes this allegation, asserting that the wheel assemblies were

defective when tendered and, therefore, that ADI breached the contract.

### A.  Maryland contract law.

Under Maryland law, courts interpret contracts objectively.  *Walker v. Dep't of Human

Res.*, 842 A.2d 53, 61 (Md. 2004).  Courts must "determine and effectuate the intent of the

parties," and do so by inquiring what a reasonable person in the position of the parties would

have intended the contract language to mean.  *Gresham v. Lumbermen's Mut. Cas. Co.*, 404 F.3d

253, 260 (4th Cir. 2005).  If the language is unambiguous, the plain meaning of any disputed

terms governs.  *Id.*  Moreover, any allegations of subsequent modifications to the contract

require proof that both parties mutually consented to the modifications before a court will alter

its interpretation of the original contract.  *Cambridge Techs., Inc. v. Argyle Indus., Inc.*, 807

A.2d 125, 135 (Md. Ct. Spec. App. 2002).

Generally, a plaintiff alleging breach of contract under Maryland law bears the burden to

prove "that the defendant owed the plaintiff a contractual obligation and that the defendant

breached that obligation."  *Taylor v. NationsBank, N.A.*, 776 A.2d 645, 651 (Md. 2001).

Contracts involving the sale of goods are governed by the Uniform Commercial Code as adopted

---

[5] ADI also argues that Rockland's motion for summary judgment should be dismissed as
untimely.  (ECF No. 40 at p. 3).  Because the court is denying Rockland's cross-motion it need
not address the timeliness question.

by Maryland.  *See* Md. Code Ann., Com. Law § 2-102 *et seq*.  A buyer alleging that the seller

tendered nonconforming goods can assert a breach of contract claim under § 2-714(1).  Goods

are nonconforming when they "are not in accordance with the obligations under the contract."

*Champion Ford Sales, Inc. v. Levine*, 433 A.2d 1218, 1222 (Md. Ct. Spec. App. 1981) (citing

Md. Code Ann., Com. Law § 2-106(2)).  The nonconformity must "substantially impair[] the

product's value to the buyer" to constitute a material breach.  *Id.*

### B.  There is a genuine dispute as to whether ADI tendered conforming goods.

Both parties agree that the replacement wheel assemblies are damaged and do not

conform to the contract specifications.  The parties disagree, however, on who and what caused

the damage.[6]  Based on the court's review of the record and briefings, there is a genuine dispute

over the key material fact of whether the wheel assemblies were damaged when tendered by

ADI.[7]  Accordingly, summary disposition of this claim is not proper.

ADI cites several pieces of undisputed evidence to support its argument that the wheels

were undamaged and conforming when tendered to Rockland.   First, API inspected and certified

that the replacement wheels were "OH" quality and conformed to the contract specifications on

May 12, 2011, about five days before ADI shipped the assemblies to Rockland.  (ECF No. 38-2

at pp. 16–19).  Second, Rockland admits that it did not inspect the assemblies before shipping

them to NZA.  (ECF No. 38-2 at p. 20).  Third, ADI employee Westerfield specifically told

---

[6] ADI shipped a total of six wheel assemblies to Rockland: the initial group of four, in which
NZA and Rockland claimed that two were defective and returned them to ADI, and the second
shipment of two replacement assemblies.  Both parties focus their dispute on the second
shipment of replacement assemblies, and so the court will similarly analyze whether there is a
genuine dispute of material fact regarding the condition of the replacement assemblies when
tendered to Rockland, not the initial set.

[7] The parties also dispute whether the replacement assemblies were supposed to be tendered
already painted.  That dispute, however, is not material to the central question of whether the
assemblies were damaged when tendered.

Rockland attorney Faguy in a March 16, 2011, email that NZA's sandblasting procedure to remove paint could also damage the assemblies. (ECF No. 38-7 at p. 3) (stating that sandblasting can remove metal, add pitting and scarring, and that the total amount of damage "adds up fairly quickly"). Westerfield's written warning to Faguy occurred about two months before ADI shipped the assemblies to Rockland. Finally, it is undisputed that Urlich utilized that very same sandblasting procedure to remove the paint on the replacement assemblies.[8]

In response, Rockland cites the sworn affidavit of Sergeant Urlich. (ECF No. 39-1). He states that his "visual inspection" of the assemblies upon arrival had "led [him] to believe that the replacement wheel assemblies were defective," and that he removed the paint to confirm his suspicion. (ECF No. 39-1 ¶ 4). He was "very careful" when sandblasting to removing the paint, and states that he "did not cause any further damage" to the assemblies because the defects had existed prior to removing the paint. (*Id.* ¶ 5).

Urlich's affidavit, therefore, runs squarely against ADI's contention that the wheel assemblies were undamaged and conforming when tendered to Rockland. Although ADI argues that Urlich's "belief" pales in comparison to the conclusions of two "aerospace companies on two different continents," weighing evidence and witnesses' credibility is a role reserved for the fact-finder, not the court at summary judgment. *See, e.g.*, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (4th Cir. 1986). Here, a jury could believe Urlich's opinion over API's and Aermeccanica's inspections and, therefore, conclude that ADI delivered damaged wheel assemblies to Rockland.

---

[8] UTC Aerospace Systems, who analyzed the sandblasted replacement assemblies and determined that they were beyond economic repair, stated that "[s]ome sort of blast method ha[d] been utilized," and that those processes are not authorized "because they are known to remove the anodized coating." (ECF No. 39-4 at p. 6).

Moreover, although ADI has cited evidence—not disputed by Rockland—that the sort of sandblasting procedure utilized by Urlich can cause metal removal, pitting, and scarring, ADI has not cited any evidence showing that sandblasting can be responsible for *all* of the damage observed by Urlich and UTC in their damage inspections.  (ECF Nos. 39-1 at p. 5; 39-4 at p. 2). Urlich described observing "excessive wear" and "unblended gouging," and ADI has not cited undisputed evidence showing that kind of damage can be caused by sandblasting.  Even if sandblasting can cause that kind of damage, however, Urlich disputes that it did in this specific instance.

Again, the inquiry at summary judgment is not whether one party has cited more persuasive evidence but whether there are genuine disputes over material facts.  Here, because Urlich's affidavit directly refutes the evidence cited by ADI regarding the condition of the assemblies when tendered, summary judgment will not be granted.

## II.  Count II (Rescission and Restitution).

Both parties also move for summary judgment on Count II of Rockland's SAC, its claim for rescission and restitution.  ADI argues that equitable relief is unavailable to Rockland due to its delay in requesting rescission, while Rockland argues that the facts justify the court exercising its equitable discretion to grant Rockland relief.

Rather than addressing each argument raised by the parties, it is sufficient here to hold that because Rockland's rescission claim necessarily turns on whether ADI materially breached the contract, and the facts underlying that question are genuinely disputed, summary disposition of the rescission claim also will not be granted.

**CONCLUSION**

For the reasons stated above, ADI's and Rockland's motions for summary judgment will

be denied.  A separate order follows.


_____10/01/2014_____                    _____/s/_____
Date                                                  Catherine C. Blake
                                                      United States District Judge